**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| CARL DAVID RICHARDSON, | * | |
| Petitioner, | * | CASE NO. 3:07-CV-90016 |
| v. | * | 28 U.S.C. § 2255 |
| | | CASE NO. 3:05-CR-19  CAR |
| UNITED STATES OF AMERICA, | * | |
| Respondent, | * | |

## REPORT AND RECOMMENDATION

Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 having come before this court for preliminary consideration as required by Rule 4 of the Rules Governing Section 2255 Proceedings For The United States District Courts, the same was found to be timely.  Said motion alleged grounds of ineffective assistance of counsel and prosecutorial misconduct, among other claims, in challenging Petitioner's conviction/judgment of October 25, 2006.  The motion presented factual issues which could only be determined by an evidentiary hearing.  Therefore, an evidentiary hearing was held with newly appointed counsel for Petitioner Richardson on January 22, 2008, Transcript of which was filed on February 27, 2008. (Doc. 75).

## Procedural History

Petitioner Richardson was charged in a Superseding Indictment returned in this Court on November 16, 2005, with Importing Explosive Material and Dealing in Explosives Without a License in violation of 18 U. S. C. § 842(a)(1) on one occasion. (Doc. 39).  On January 26, 2006, Richardson entered into a Plea Agreement with the Government and pled

guilty to the offense charged. (Doc. 45, 46). He was sentenced on October 25, 2006, to a term of 115 months imprisonment. (Doc. 60). He filed no direct appeal, but timely filed on October 5, 2007, the Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 under consideration. (Doc. 61).

**Petitioner's § 2255 Claims**

At the evidentiary hearing (Transcript - (Doc. 75)) held on January 22, 2008, newly appointed Counsel pared Richardson's multifarious claims down to a coherent presentation. Attorney Eric Eberhardt, representing Petitioner Richardson for the purposes of the § 2255 hearing, announced:

> [After] discussion with Mr. Richardson, I do believe we're going to be able to refine the issues for the court ... Number Three, prosecutorial misconduct is not at issue. Number eight, the Title 18 claim; Number Nine, the judicial powers claim; Number ten, the issues related to the facts surrounding his underlying case – those are no longer at issue. ... The primary issues – – the other enumerated matters here can pretty succinctly be condensed into the issue of ineffective assistance of counsel in relation to Mr. Richardson's mental capacity to understand what was going on, and then, whether that was properly taken into consideration in regard to sentencing.
> So, it is more of an issue surrounding his mental state and what should have been done regarding that mental state as to whether he was competent, as to whether it affected his actions, and whether it was properly considered in relation to sentencing.

Thus, Counsel Eberhardt, with Petitioner's consent, "laid out the framework of what we're dealing with." (Doc. 75 at 3, 4, 5). The Government accepted that framework. *Id.* at 5.

On direct examination, Petitioner Richardson related having had a mental evaluation by a Dr. Michael Bach for the Social Security Administration, when Richardson was seeking

2

Social Security benefits for his Claim of mental illness in 2005. *Id.* at 6, 7. Petitioner testified that Dr. Bach's role in relation to his Social Security benefits claims was just to evaluate him and prepare a report in relation to his evaluation. *Id.* at 7. Petitioner Richardson testified that his understanding of Dr. Bach's analysis of his mental state was, "That I needed to be on medication, and he diagnosed me as ...bipolar, anxiety disorder, borderline intellectual functioning, and paranoid personality disorder." *Id.* at 9. Counsel tendered the report into the evidence as Defendant's Exhibit One "for whatever value the court may place on it," and noted that the report was available at the time of Petitioner Richardson's plea, plea agreement, and sentencing. *Id.* The Government objected only to the hearsay nature of the exhibit and to it being considered for the truth of the matters asserted therein, but profered that it might be considered on the issues of ineffective assistance of counsel. *Id.* at 10. On cross-examination, Petitioner Richardson testified that he did not receive social security benefits despite Dr. Bach's analysis. *Id.* at 25. Petitioner Richardson testified that he ignored Dr. Bach's instructions to take medication for his condition, that he recalled entering into a guilty plea in the case at hand and recalled that he was not on any medication before or after entering his guilty plea, nor at any time before his sentencing. *Id.* at 13, 14.

Lester Miller, counsel originally appointed to represent Petitioner Richardson and did so at the time of Richardson's guilty plea and sentence, testified that he met with Richardson about six times and talked with him numerous times over the telephone and discussed the case with both Richardson and his wife. (Doc. 75 at 36). Miller also testified that Richardson never mentioned any mental illness until right before sentencing, that it came up in

conversation between them, but only as "some minimal records in [Richardson's] possession that suggested that he had had a bout with depression at some point in time in his life and perhaps a suicide attempt." *Id.* at 37. Likewise, Attorney Miller's discussions with Richardson's wife contained very limited reference to mental illness, according to Miller's testimony. He stated:

> She told me he drank a lot, and he would pass out drunk sometimes, that they would argue, that he had smoked marijuana, you know, on numerous occasions. Of course, his criminal history indicated that as well. I think she talked about maybe the suicidal attempts he had had in the past or some depression, nothing about being crazy or paranoid or delusional or anything like that.

*Id.* at 47. In fact, Attorney Miller testified that he never had any doubt that Richardson was competent to plead guilty and be sentenced. *Id.* at 57, 58.

In face of the situation presented, newly appointed Counsel Eberhardt motioned the Court for a psychological evaluation of Petitioner Richardson, specifically relating to the issues referenced above in regard to Richardson's counsel's effectiveness in not having sought such an evaluation prior to Richardson's plea and sentence, and Richardson's competence at the time of his guilty plea and/or at the time of his sentencing. The motion for psychological evaluation was granted without objection from the Government. The psychological evaluation has now been received and is in the record sealed to all but the court and counsel. (Doc. 78). Counsel have argued the effect of the findings contained in the psychological evaluation, which is incorporated herein and made a part hereof by reference.

Petitioner's new Counsel urges this Court for a finding of ineffective assistance of counsel for Petitioner's Plea Attorney's not having sought a mental or psychological evaluation of Petitioner Richardson prior to his plea and sentence, regarding his competence at the time of his guilty plea and/or at the time of his sentencing, arguing that counsel's deficiencies resulted in harm to Petitioner, particularly in the loss of Acceptance of Responsibility credit due to Petitioner's failure to report for sentencing on June 1, 2006, as ordered, and by the additional enhancement for obstruction of justice by Petitioner based upon his same failure to report for sentencing, with the resultant change in the maximum guideline sentence from 60 months to 120 months. (*See* Doc. 75 at 4, 5).

## **Findings of Fact and Conclusion of Law**

Petitioner's Counsel first questioned Petitioner Richardson in regard to Petitioner's Social Security disability claim of mental illness and the evaluation rendered by Dr. Michael Bach, which was tendered and admitted for limited purposes as Petitioner's Exhibit One. Petitioner Richardson testified that Dr. Bach's evaluation or diagnosis was that he was bipolar, with anxiety disorder, borderline intellectual functioning, with paranoid personality disorder; that the evaluation document was available to his former counsel prior to his guilty plea; that Dr. Bach instructed Petitioner Richardson to take anti-psychotic medications, but that Petitioner ignored those instructions, and was on no medications at the time of his guilty plea or sentencing. (Doc. 75 at 5 - 15). However, Petitioner Richardson testified on cross-examination by the Government's Counsel that after his arrest, although he was given Lithium and Haldol at the Jones County jail, he did not begin to question whether he was guilty, that

he did not question it now, that he had no doubt in his mind that he did the things that were alleged against him, and that in his own mind, he had at all times accepted responsibility for his conduct. (Doc. 75 at 68, 69).

Petitioner Richardson testified that on the date set for his sentencing, he and his wife were coming to court for the sentencing when his car broke down; that he got mad and walked off, leaving his wife and the broken down car by the side of the road; that he was not on any medication at the time; and that he walked to the small town of Farmington and hitch-hiked back home after two or three days. *Id.* at 16. Petitioner Richard testified on direct examination that just before his actual sentencing, after he had been re-arrested, he told his attorney that the PSI had information in it about his mental illness and he wanted to tell the Judge about it, but that his attorney told him not to do that. *Id.* at 20.

Richardson testified at hearing that he felt like he would have shown up for sentencing on the original date set if he had been on medication; that he had never missed a court date before. *Id.* at 21, 22. It is notable that Petitioner Richardson's PSI, in the Criminal History section, enumerates from ¶¶ 29 - 75 more than 29 criminal prosecutions with no evidence of failure to appear and all to which Petitioner pled guilty. At ¶¶ 83 -75, three hospitalizations "followed by a regime of psychotherapy and psychotropic medications" were noted, plus two outpatient evaluations with psychotropic treatments. The PSI reports at ¶ 87, "While under pretrial services supervision (approximately 7 months), four urine screens were collected. All screens were negative for illegal substances."

Richardson's Plea counsel testified at hearing that he was aware of the psychological report from Dr. Bach at the time of Petitioner's sentencing, but that he did not personally speak to the judge about it; that he did not make any arguments about Petitioner's mental health or the report during the course of the sentencing; that ne never addressed the relationship between the diagnosis that appeared in that report and whether that may have contributed to Petitioner's failure to appear for sentencing on June 1, 2006; and that he never at any time requested any type of evaluation of Petitioner's mental state to see if there was a connection between any mental illness and Petitioner's failure to show for sentencing. (Doc. 75 at 64). The only indication that Petitioner's Plea Attorney made any effort to locate Petitioner on the day of sentencing or thereafter until Petitioner's arrest nine weeks later, was his comment that his telephone calls to Petitioner were being avoided. *Id.* at 61.

After June 1, 2006, the PSI was unilaterally revised by Probation[1] to withdraw the 3 points credit for Acceptance of Responsibility (PSI at ¶ 15) for Petitioner's failure to appear for sentencing, and to add 2 points for Obstruction of Justice for Petitioner's same failure to appear for sentencing. Petitioner's attorney acknowledged that Petitioner suffered an increased sentencing range of almost twice what his previous range had been, but the

---

[1] Probation notes in the Addendum To The PreSentence Report under Objections to Paragraphs 14 and 22 - Adjustment for Obstruction of Justice that "The U.S. Probation maintains that the enhancement for obstruction of justice was appropriately applied," citing to U.S.S.G. § 3C1.1 and Application Note 4(e), of the advisory sentencing guidelines. No reference is made that the Government urged an Obstruction of Justice enhancement and none is found in the record. In fact, in the following paragraph relative to the PSI ¶ ¶ 15 and 25, it is noted, "The U.S. Probation Office acknowledges that the government has filed a Motion For Additional Decrease for Acceptance of Responsibility pursuant to U.S.S.G. § 3E1.1(b). Probation omits that the Commentary note 4 to U.S.S.G. § 3E1.1
provides: *There may, however, be extraordinary cases in which adjustments under both § § 3C1.1 and 3E1.1 may apply.*

Attorney did not testify that he made any objection or argument to the court about a connection between Petitioner's mental health and his failure to appear for sentencing, but stated only, "I felt the judge should not have given him the obstruction and losing acceptance of responsibility because to me it seemed like it's double dipping." *Id.* at 66, 67.

To establish a claim for relief based upon ineffective assistance of counsel, Petitioner must meet the two pronged test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984).  (1) Petitioner must show that his counsel's representation was deficient and (2) Petitioner must show that this deficient representation prejudiced Petitioner. *Strickland,* 466 U.S. at 687; see *Baxter v. Thomas,* 45 F. 3d 1501, 1512 (11th Cir. 1995).

The Government's psychological evaluation (Doc. 78 at 8) shows Diagnostic Impressions resulting as "Bipolar Disorder, Antisocial Personality Disorder, Borderline Intellectual Functioning," and as Treatment Recommendations that, "Regardless of the outcome of this case, it is recommended that Mr. Richardson continue to receive psychotropic medication to address his symptoms of mental illness." (Doc. 78 at 10).

In view of overwhelming evidence available to Petitioner's attorney that Petitioner Richardson had suffered mental illness from his youth, it must be concluded that any minimally competent attorney would have motioned the court for a psychological evaluation for, if nothing more, the effect it could have had on the court's sentencing consideration of enhancements related to Petitioner's aberrant behavior on June 1, 2006, when his car broke down on the way to his sentencing date and he walked off leaving his wife and broken down car by the side the road and disappearing for two or three days.  Counsel neither motioned

for such an evaluation, nor did he argue the known indications and bouts of mental illness or aberrant behavior, which should have led the attorney to the conclusion that Petitioner's failure appear was caused by his mental condition and resulted in severe sentencing penalties which should have been anticipated and warded off to the extent possible.

**WHEREFORE IT IS RECOMMENDED** that this Court grant Petitioner Richardson's Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on the basis stated above and to the extent recommended and reconsider Petitioner's sentence after full consideration of the psychological evaluation provided by the Government Psychologist (Doc. 78) in relation to Petitioner's Plea Attorney's effort and lack thereof in urging consideration in relation to Petitioner's sentence, which was in essence doubled while counsel neglected the mental health issue.  Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner and/or the Government may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 3rd day of December 2008.

                                                    **S/ G. MALLON FAIRCLOTH**
                                                    **UNITED STATES MAGISTRATE JUDGE**